# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BURHAN CULCULOGLU,         )
                               )
               Plaintiff,   )    Case No.: 2:13-cv-00446-GMN-CWH
      vs.                 )
                               )    **ORDER**
MICHELLE LEE CULCULOGLU,   )
                               )
              Defendant.   )
_____)

Pending before the Court is the Motion for Temporary Restraining Order (ECF No. 7) filed by Plaintiff Burhan Culculoglu ("Petitioner"). Also pending before the Court is the Motion for Scheduling of an Expedited Hearing (ECF No. 6) filed by Petitioner.

## I.    BACKGROUND

This case relates to the alleged wrongful retention of three children in the United States by their mother, Michelle Lee Culculoglu ("Respondent"). Petitioner alleges that he currently resides in Whistler, British Columbia, Canada where, until September 2012, he lived with Respondent and their three children. (Compl. 3:1-18, ECF No. 1.)

On March 15, 2013, Petitioner filed his Verified Complaint ("Verified Complaint" or "Petition") asserting a cause of action for Wrongful Retention under The Hague Convention on International Child Abduction. (ECF No. 1.) In the Petition, Petitioner seeks return of the children to Canada to allow the courts of the children's "habitual residence" to determine any custody issues. (Compl. 7:15-9:3, ECF No. 1.) Petitioner filed the instant motion seeking an *ex parte* Temporary Restraining Order to ensure that the minor children, identified herein as "the children" or by the initials TC, KC, and AC, remain in Nevada until the Court can resolve the merits of this matter. (ECF No. 7.)

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F.Supp. 2d 1111, 1126 (E.D. Cal. 2001).  Furthermore, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

Like a preliminary injunction, the Court may issue a temporary restraining order if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at

trial.  The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

## III.  __DISCUSSION__

For the reasons discussed below, the Court concludes that Plaintiff has established each of the four prongs of the TRO analysis.  Additionally, because of the risk that Respondent will flee this jurisdiction with the children, the Court finds it necessary to grant this Motion for Temporary Restraining Order without notice to Respondent.

It is important to note that at this stage of the present litigation, the Court is not determining that TC, KC, and AC should be returned to Canada.  Rather, the Court concludes that Petitioner has sufficiently satisfied the *Winter* standard and a Temporary Restraining Order is justified to preserve the status quo pending a hearing and the Court's ruling on the Petition.  Accordingly, the Court will temporarily restrain Respondent from concealing or removing the children from the District until the Court rules on the Petition.

### A.    Likelihood of Success on the Merits

Before Plaintiff is entitled to the requested relief, he must first establish that he will likely succeed on the merits of his Wrongful Retention of Children claim filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention").

The Hague Convention is a multilateral international treaty on parental kidnapping to which the United States and Canada are signatories.  The goal of the Hague Convention is to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25,

1980, preamble, T.I.A.S. no. 11670 [hereinafter *Hague Convention*].  The objects of the Convention are: (1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and (2) "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." *Hague Convention*, art. 1.  The Hague Convention applies where a child has been removed or retained away from his or her habitual residence in breach of the custody rights that the petitioner (parent) was exercising at the time of the wrongful removal or wrongful retention. *Hague Convention*, art. 3.

The United States has implemented the Hague Convention by enactment of the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11611.  Under ICARA, state and federal district courts have concurrent jurisdiction over claims arising under the Convention. 42 U.S.C. § 11603(a).  Furthermore, ICARA vests these courts with the authority to order the return of wrongfully removed or retained children. *See* 42 U.S.C. § 11603.

At bottom, the Hague Convention and ICARA seek to return children to their country of habitual residence for the resolution of any custody dispute, and to avoid international forum shopping. *Riley v. Gooch*, No. 09-cv-01019-PA, 2009 WL 3401013, at *2 (D. Or. Oct. 21, 2009) (citing *England v. England,* 234 F.3d 268, 271 (5th Cir. 2000); *Lalo v. Malca,* 318 F. Supp. 2d 1152, 1154 (S.D. Fla.2004); *Journe v. Journe,* 911 F. Supp. 43, 46 (D.P.R. 1995)).  Explicitly, an ICARA hearing is not a custody hearing. *See Blondin v. Dubois,* 189 F.3d 240, 245 (2nd Cir.1999) (under ICARA, a district court has "the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim"); *Hague Convention*, art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue").  Rather, an ICARA proceeding merely determines which nation should hear the underlying custody claim. *See Blondin,* 189

F.3d at 245.

As stated above, to prevail on the Petition, Petitioner will have to establish that (1) TC, KC, and AC were removed or retained away from the country in which they were habitually resident immediately before the removal or retention; (2) that removal or retention was in breach of the custody rights of the Petitioner, as provided by the law of the country of the children's' habitual residence; and (3) at the time the children were removed or retained, Petitioner was actually exercising his rights of custody. *Hague Convention*, art. 3.

### 1. *Removal or Retention of TC, KC, and AC*

The first prong requires Petitioner to establish that the children were removed or retained away from the country of their habitual residence. *See Hague Convention*, art. 3(a). It appears indisputable that Respondent removed the children from Canada and has retained them in the United States for several months. Thus, Petitioner need only establish that Canada was the children's "habitual residence" immediately before Respondent's removal to and retention in the United States.

Although the Hague Convention and ICARA do not define "habitual residence," the Ninth Circuit provided an analytical framework in *Mozes v. Mozes*, 239 F.3d 1067, 1071-1081 (9th Cir. 2001). First, in order to acquire a new habitual residence, there must be a "settled intention to abandon the one left behind." *Id.* at 1075. Additionally, there must be an actual change in geography combined with the passage of some time. *Id.* at 1078. This passage of time need only be "sufficient for acclimatization." *Id.* (citation omitted).

Here, the facts in Petitioner's Verified Complaint adequately demonstrate that he will likely succeed in establishing that the children habitually resided in Canada immediately preceding their retention in the United States. Specifically, Petitioner states that he and Respondent moved to Whistler, British Columbia, Canada so that he could accept a job and that they intended to stay "for at least the term of there [sic] respective work visas (three years)."

(Compl. 3:3-5, ECF No. 1.)  Once the family arrived in Canada in June 2012, Petitioner and Respondent "signed their children up for ski school, registered [TC] on a waiting list for school at the preeminent pre-school in the Whistler area, and began their search for a rental home in Canada. [Respondent] even made a doctor's appointment for herself in Whistler for October 19, 2012." (*Id.* at 3:6-9.)  These facts evidence a "settled intention to abandon" the old habitual residence and adopt Whistler, British Columbia, Canada as the children's new habitual residence.  Furthermore, these facts demonstrate that adequate time passed and the parties took sufficient actions such that the children were acclimated to Canada.  Accordingly, Petitioner has shown that he will likely succeed in establishing the first prong of his Wrongful Retention cause of action.

### 2.   *Breach of Petitioner's Custody Rights*

The second prong of Petitioner's Wrongful Retention claim requires that Petitioner prove that Respondent's retention of the children in the United States was in breach of the custody rights of the Petitioner, as provided by Canadian law. *Hague Convention*, art. 3(a). Canadian law provides that "whether or not married to each other and for so long as they live together, the mother and father of a child are joint guardians." Family Relations Act, R.S.B.C. 1996, c. 128 § 27(1) (Can.).[1]  The Family Relations Act further provides that "if the father and mother live together," then "the father and mother jointly" exercise custody of the child or children. Family Relations Act, R.S.B.C. 1996, c. 128 § 34(1)(a) (Can.).

In this case, because Petitioner and Respondent were living together immediately before Respondent's alleged wrongful retention of the children in the United States, they were jointly exercising custody of the children. (Compl. 2:17-3:9.)  Thus, Petitioner has demonstrated that the retention of the children in the United States is violating his right to joint custody of the

---

[1] The text of this Act was provided by Petitioner as Exhibit 2 to his Verified Complaint.

children.  Accordingly, Petitioner has shown that he will likely succeed in establishing the second prong of his Wrongful Retention cause of action.

### 3.    Petitioner's Actual Exercise of his Custody Rights

Finally, Petitioner must establish that, at the time the children were removed or retained, Petitioner was actually exercising his rights of custody. *Hague Convention*, art. 3(b). Petitioner's Verified Complaint adequately demonstrates that he was exercising his rights of custody at the time Respondent brought the children to the United States and that Petitioner would have continued to exercise his rights of custody but for Respondent's allegedly wrongful retention of the children in the United States. (Compl. 2:17-7:13.)  Accordingly, Petitioner has shown that he will likely succeed in establishing the third and final prong of his Wrongful Retention cause of action.

### B.    Likelihood of Irreparable Harm in the Absence of the Requested Relief

Given the risk that Respondent could further conceal the location of the children, the Court finds that Petitioner will likely be irreparably harmed in the absence of the requested relief to maintain the status quo.

### C.    The Balance of Equities Tips in Plaintiff's Favor

The Court concludes that the risk of Respondent secreting away the children before the resolution of the Petition, outweighs any injury to the Respondent or the children that may result from ordering them to stay in the District.  First, this Order merely maintains the status quo by ordering that Respondent and the children remain in the District during the pendency of this action.  Second, the Verified Complaint states that Respondent's parents reside in the District. (Compl. 2:25-26.)  Thus, this Order will not impose a hardship on Respondent. Accordingly, the balance of equities tips in favor of Petitioner and supports the issuance of the requested temporary restraining order.

/ / /

D.   **The Issuance of the TRO Benefits the Public's Interest**

"The public interest analysis for the issuance of [injunctive relief] requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted).  Furthermore, ICARA expressly authorizes a court to "take or cause to be taken measures under Federal or State law, as appropriate, . . . to prevent the child[ren]'s further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604(a).  Accordingly, in this case, the Court finds no such public interest that would be injured by the issuance of such injunctive relief.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that the Motion for Temporary Restraining Order (ECF No. 7) is **GRANTED**.

1.      The United States Marshal shall serve Respondent, Michelle Lee Culculoglu, located at 34 Fox Trace Court, Henderson, NV 89074, with this Order, as well as Petitioner's Motion for Temporary Restraining Order (ECF No. 7), which is attached to this Order.

2.      Respondent Michelle Lee Culculoglu, her agents, and all others acting in concert with her, is **HEREBY ENJOINED** from taking the children, TC, KC, and AC, or allowing the children to be taken, outside the State of Nevada without express written authorization from this Court.  **The Court will not hesitate to order the arrest of any person who violates this injunction.**

3.      Respondent Michelle Lee Culculoglu, her agents, and all others acting in concert with her, are **FURTHER ENJOINED** from concealing TC, KC, and AC or changing the children's physical place of residence without express written authorization from this Court.

4.      Respondent Michelle Lee Culculoglu shall deliver to the United States Marshal, for safekeeping, any passports for TC, KC, and AC that are in Respondent's possession,

custody, or control, and shall further notify the United States Marshal if Respondent knows of any person having possession of such a passport.  The United States Marshal is authorized to receive and to hold any such passport pending further instructions from this Court.

      **IT IS FURTHER ORDERED** that the Motion for Scheduling of an Expedited Hearing (ECF No. 6) is **GRANTED**.  The Court will conduct a hearing on **<u>Monday, April 15, 2013, at 2:00 pm, in Courtroom 7D of the Lloyd D. George United States Courthouse at 333 Las Vegas Blvd. South Las Vegas, NV 89101</u>**.  At that time, the Court will hear any arguments for extending, modifying, or dissolving this injunction.  **Any written submissions must be received by the Clerk no later than 5:00 pm on Wednesday, April 10, 2013**.  Additionally, at that time, the Parties shall provide a list of agreed upon dates for an evidentiary hearing on the merits of the Petition.  Finally, the Parties shall advise the Court on the expected length of such an evidentiary hearing.

      **IT IS FURTHER ORDERED** that this Order shall expire on **Wednesday, April 17, 2013, unless extended for good cause.**

      **DATED** this 4th day of April, 2013.

_____
Gloria M. Navarro
United States District Judge

1

2  WILLICK LAW GROUP
   MARSHAL S. WILLICK, ESQ.
3  Nevada Bar No. 002515
   3591 E. Bonanza Road, Suite 200
4  Las Vegas, NV  89110-2101
   Phone (702) 438-4100; Fax (702) 438-5311
5  email@willicklawgroup.com
   Attorneys for Petitioner

6

7

8                    UNITED STATES DISTRICT COURT

9                        DISTRICT OF NEVADA

10

11  BURHAN CULCULOGLU,                    CASE NO:    2:13-CV-446-GMN-CWH

12         Petitioner,

13     vs.

14  MICHELLE LEE CULCULOGLU,              DATE OF HEARING: **04/15/2013**
                                          TIME OF HEARING:  **2:00 P.M.**
15         Respondent.

16

17  **PETITIONER'S MOTION UNDER THE HAGUE CONVENTION FOR**
18    **ENTRY OF A TEMPORARY RESTRAINING ORDER AND**
      **SCHEDULING OF AN EXPEDITED HEARING**
19              **AND ORDER THEREON**

    **I.    INTRODUCTION**
20
           Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Petitioner Burhan Culculoglu
21
    ("Burhan"), moves this Court for an order temporarily restraining and prohibiting Respondent
22
    Michelle Culculoglu ("Michelle") from removing their minor children, Talya Culculoglu, born
23
    February 16, 2008; Kaan M. Culculoglu, born November 25, 2009; and Alara Culculoglu, born
24
    October 11, 2011, from the jurisdiction of this Court.  Burhan also moves for the setting of an
25
    expedited hearing in this matter to protect his rights under the Hague Convention on Civil Aspects
26
    of International Child Abduction ("Hague Convention" or "Convention") and the International Child
27

28

Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11610.  Injunctive relief is necessary to prevent irreparable harm to Burhan and to preserve the status quo.[1]

Under 42 U.S.C. § 11604(a), a district court is empowered to take appropriate measures to protect the well-being of children involved in these kinds of cases, and to prevent children from being further removed or concealed before the final disposition of a Hague petition.  For the reasons outlined in Burhan's *Verified Complaint* and the points and authorities in support of this *Motion*, such relief is necessary in this case.

Burhan respectfully requests this Court shorten or otherwise waive the time requirements that apply to motions, grant an immediate hearing on this *Motion*, enter a temporary injunction, and grant a hearing requiring Michelle to show cause why the relief set forth Burhan's *Verified Complaint* should not be summarily granted by this Court.

This *Motion* is based upon the papers and pleadings on file herein, and the attached *Declaration of Trevor M. Creel, Esq.*

# NOTICE OF MOTION

**TO: MICHELLE LEE CULCULOGLU, Respondent; and,**

**TO: SHANN WINESETT, ESQ., Purported Attorney for Respondent**

**YOU** will please take notice that the foregoing *Motion* will be heard by the Honorable Gloria M. Navarro, United States District Court Judge, District of Nevada, in Courtroom **7D** of the Lloyd D. George U.S. Courthouse located at 333 S. Las Vegas Blvd., Las Vegas, Nevada 89101, on the **15th** day of _____**April,**_____ 2013, at the hour of **2:00** o'clock **PM**_____ , or as soon thereafter as counsel can be heard.

---

[1] Different judges of this Court have adopted different procedures in these actions.  Some have simply set a first hearing on the Petition *sua sponte*, and, if the facts were not contested, completed the case at the initial hearing.  Others have requested a motion to send the children back to their Habitual Residence, and evaluated whether evidentiary proceedings were required after review of the initial filings.  When we inquired as to this Court's preferred procedure in these cases, we were instructed to file a motion styled the way this one has been drafted.

# POINTS AND AUTHORITIES

## II.    FACTS

Burhan will only provide a very brief recitation of the facts as he previously provided a detailed rendition in his *Verified Complaint and Petition for Return of Children to Petitioner*, which was filed on March 15, 2013.

Burhan and Michelle are the parents of three minor children, Talya Culculoglu, born February 16, 2008; Kaan M. Culculoglu, born November 25, 2009; and Alara Culculoglu, born October 11, 2011.

After significant discussions between Burhan and Michelle in early 2012 while the parties were still residing in Singapore, Burhan accepted a position in Whistler, British Columbia, Canada to become the Director of Operations at the Fairmont Chateau Whistler Luxury Ski Resort. The parties and their children moved from Singapore to Whistler in June of 2012.

On September 15, 2012, Michelle and the children traveled to Henderson, Nevada for what was supposed to be a brief visit with Michelle's parents, with the understanding and advance arrangements that Michelle and the children would return on October 10, 2012 (in time to celebrate Alara's first birthday).[2]

Shortly before Michelle and the children were to return, she notified Burhan that only she and Alara would be returning and that they would not be coming back to Canada until a week or so ***after*** Alara's birthday. In response, Burhan demanded that all of the children be returned as agreed.

Before Michelle was set to return with Alara, she again contacted Burhan, and changed her announced plans again, this time informing him that she would be the only one returning, and only for the specific purpose of retrieving her belongings and one of the parties' vehicles. Burhan was distraught and continued to insist that all of the children be returned to Canada; Michelle simply refused and allowed the rescheduled tickets that were purchased for the return of the minor children to expire on October 16, 2012.

---

[2] When Burhan booked the flights for Michelle and the children's travel, he simultaneously booked their return flight for October 10, 2012.

WILLICK LAW GROUP
3591 East Bonanza Road
Suite 200
Las Vegas, NV 89110-2101
(702) 438-4100

-3-

Following Michelle's wrongful retention of the children as of October 16, 2012,[3] Burhan made numerous attempts to retrieve his children by contacting Michelle and her father to arrange for their pick-up. Michelle resisted all such efforts, and even attempted to thwart Burhan's requests to simply see his children by refusing to answer his phone calls and text messages while taking active measures to hide the children from Burhan.

In response, Burhan filed an Application under the Hague Convention with the British Columbia Central Authority requesting the return of children, as well as a *Verified Complaint* with this Court (filed March 15, 2013).

Upon information and belief, the children are currently being kept by Michelle at her parent's residence located at 34 Fox Trace Court, Henderson, Nevada 89074.

## III.   ARGUMENT

### A.   Burhan is Entitled to Emergency Relief

Federal courts are empowered to grant temporary restraining orders and preliminary injunctions.[4] Like Federal Rule 65, the local Rules of this Court authorize the grant of emergency relief.[5]

Consistent with Federal Rule 65 and the exigent circumstances that typically exist in Hague Convention cases, Article 2 of the Hague convention provides that "Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the

---

[3] The case law indicates that when a return is planned, the period of wrongful retention commences on the date of announcement of the intention not to return as scheduled.

[4] *See* Fed. R. Civ. P. 65.

[5] *See* L.R. 7-5.

WILLICK LAW GROUP
3591 East Bonanza Road
Suite 200
Las Vegas, NV 89110-2101
(702) 438-4100

-4-

Conventions. For this purposes they shall use the most expeditious procedures available."[6] The objects of the Hague Convention are:

> Article 1(a):  To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and
>
> Article 1(b):  To ensure the rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

Federal Rule 65 allows this Court to expeditiously promote the objectives of the Hague Convention by providing for emergency relief.

Applicable state law provisions also support Burhan's request for expeditious procedures for the return of his children. For instance, NRS 125D.190(5) notes that one instance of wrongful removal or retention is evidence of a danger of further such efforts, and gives a court authority to use whatever measures are necessary to recover a child if there is a credible risk that a child will be abducted or concealed by directing:

> (b) The use of law enforcement to take any action reasonably necessary to locate the child, obtain return of the child, or enforce a custody determination pursuant to the provisions of this chapter or the law of this State other than this chapter; or
>
> (c) Grant any other relief allowed pursuant to the law of ths State other than this chapter.[7]

The decision to grant or deny an injunction lies within the sound discretion of the district court.[8] A preliminary injunction may be issued to protect the moving party from irreparable injury and to preserve the power of the trial court to render a meaningful decision on the merits.[9] A party seeking a preliminary injunction is required to show (1) a substantial likelihood that the movant will

---

[6] *Hague Convention on the Civil Aspects of International Child Abduction* (Oct. 25, 1980), T.I.A.S No. 11,670 at 1, 22514 U.N.T.S. at 98. Just weeks ago, the United States Supreme Court emphasized the importance of having the courts handling these cases do so as expeditiously as possible. *See Chafin v. Chafin*, ___ U.S. ___ (No. 11-1347, Feb. 19, 2013) (majority opinion: "Importantly, whether at the district or appellate court level, courts can and should take steps to decide these cases as expeditiously as possible, for the sake of the children who find themselves in such an unfortunate situation. Many courts already do so"; concurring opinion of JJ. Ginsburg, Scalia, and Breyer: "Expeditious procedures are essential at all stages of the Convention process").

[7] NRS 125D.190(5)(b) and NRS 125D.190(5)(c).

[8] *See Zepeda v. United States INS*, 753 F. 2d 719 (9th Cir. 1983); and *Sierra On-Line, Inc. V. Phoenix Software*, Inc., 739 F.2d 1415 (9th Cir. 1984).

[9] *See FTC v. HN Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982).

ultimately prevail on the merits; (2) a likelihood of irreparable harm unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party (balance of hardships); and (4) that the injunction, if issued, would not be adverse to the public interest.[10]   As explained below, all of the elements for the requested emergency equitable relief are satisfied in this case.

**B.     There is a Substantial Likelihood that Burhan Will Ultimately Prevail on the Merits**

According to the Hague Convention, the removal or retention of a child is wrongful where the retention or removal is in breach of established custody rights defined by the law of the country in which the child was habitually resident immediately before the removal or retention, and where, at the time of removal or retention, these custodial rights were exercised or would have been exercised but for the removal or retention.[11]

By virtue of Canadian law, the country of the children's habitual residence, Burhan has custodial rights to the children.[12]   Additionally, Burhan was exercising his custodial rights until the wrongful retention.   Accordingly, Burhan is likely to prevail on the merits of his petition for the return of the children.

**1.     The Children Were Habitual Residents of British Columbia, Canada Before Their Wrongful Retention**

The term "habitual residence" is not specifically defined in either the Hague Convention or ICARA; the Elisa Perez-Vera, Explanatory Report makes it clear that this omission was deliberate, for the purpose of requiring courts to treat the issue as "a question of pure fact, differing in that

---

[10] *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

[11] *Hague Convention on the Civil Aspects of International Child Abduction* (Oct. 25, 1980), T.I.A.S No. 11,670 at 1, 22514 U.N.T.S. at 98.

[12] *See* Exhibit 2 attached to Burhan's *Verified Complaint*.

respect from domicile."[13] "Clearly, the Hague Conference wished to avoid linking the determination of which country should exercise jurisdiction over a custody dispute to the idiosyncratic legal definitions of domicile and nationality of the forum where the child happens to have been removed."[14]

The Ninth Circuit established an analytical framework in *Mozes* for determining a child's habitual residence.[15]  First, in order to acquire a new habitual residence, there must be a "settled intention to abandon the one left behind."[16]  Second, there must be an actual change in geography combined with the passage of some period of time.[17]  However, this period of time need only be sufficient for acclimatization; under the Convention's federal implementing legislation, habitual residence may, at least theoretically, be established in a single day.[18]  The critical issue is whether the child's living arrangements in a new place evinced a "degree of settled purpose from the child's perspective," and whether the circumstances were "sufficient for acclimatization."[19]

After significant discussions with Michelle, the parties agreed that they would move from Singapore to Whistler in June, 2012, with the intention of staying for at least the term of their respective work visas (three years).  Upon their arrival in Whistler, the parties signed their children up for ski school, registered Talya on a waiting list at the preeminent pre-school in the Whistler area, and began their search for a rental home in Canada.  Michelle made a doctor's appointment for herself in Whistler for October 19, 2012.  Their last joint "settled intention" was to abandon Singapore and move to Canada.

---

[13] *See* Elisa Perez-Vera, Explanatory Report ¶ 66, in 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction 426 (1982)..

[14] *In re Application of Mozes v. Mozes*, 239 F.3d 1067, 1071 (9th Cir. 2001).

[15] *Id.*

[16] *Id.*

[17] *Id.* citing *Friedrich v. Friedrich*, 983 F.2d 1396 (6th Cir. 1993).

[18] *See Bedder v. Bedder*, S.D. Ohio, No. 1:13-cv-02 (Feb. 8, 2013).

[19] *See Robert v. Tesson*, 507 F.3d 981 (6th Cir. 2007) quoting *Feder v. Evans-Feder*, 63 F.3d 217 (3rd Cir. 1995).

The children's living arrangements in Canada evinced a degree of settled purpose from the children's perspectives. The children were signed up for ski school and the eldest child was placed on a waiting list for enrollment in pre-school. The children, especially Talya, certainly understood that they were going to remain in Canada for the indefinite future. The fact that the parties marital relationship eventually dissolved is of no consequence. As such, Canada is the children's habitual residence.

### 2. Burhan was Exercising His Rights of Custody at the Time of the Children's Wrongful Retention

As noted above, by virtue of Canadian law, the law of the children's habitual residence, Burhan was exercising his custodial rights, or would have exercised his custodial rights but for Michelle's wrongful retention. As the *Verified Complaint* establishes, the children have lived with and/or been supported by Burhan since their births.

Burhan never waived his rights of custody. Before and after the wrongful retention, Burhan diligently sought to exercise his custodial rights as well as attempt to locate his children for their immediate return.

### 3. Granting Burhan's Hague Petition Will Not Terminate Any Right of Custody of Michelle

As illustrated above, Burhan is very likely to succeed on the merits of his Hague Convention claim. Additionally, all that Burhan seeks is the children's return to Canada, their habitual residence, and not any change detrimental to Michelle's own rights of custody, should she retain any such rights.

As detailed in Burhan's *Verified Complaint*, although the Hague Convention authorizes a federal district court to determine the merits of a claim for wrongful removal or retention of a child, it does not allow a district court to consider the merits of an underlying custody dispute.

**C.     Burhan Will Suffer Irreparable Injury Unless Equitable Relief is Granted**

Given that Michelle has already wrongfully retained the children in the United States and impeded Burhan's attempts to locate and interact with them, there is obviously a risk that Michelle will further hide the children and herself when she learns that Burhan is seeking the return of his children to Canada through the United States court system. If Michelle flees with Burhan's children again and again decides to secret them away, it may be very difficult to locate them and secure their custody.

ICARA directly speaks to such a remedy.  42 U.S.C. § 11604(a) provides that a court may take appropriate measures "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition."

Should this Court decide to prevent the possibility of the children's removal from its jurisdiction, Burhan is more than willing to travel to Henderson, Nevada to care for the children pending resolution of this matter.

**D.     The Threatened Injury to Burhan Far Outweighs any Damage an Injunction May Cause Michelle**

The potential of Burhan once again losing the children outweighs any perceived injury to Michelle.  Burhan merely seeks the restoration of the status quo: the return of the children to their habitual residence.

The Ninth Circuit has consistently emphasized the importance of re-establishing the "status quo ante" – the custodial environment prior to the wrongful removal or retention.[20]

Here, Burhan is not seeking a custody order from this Court, as detailed in his *Verified Complaint*.  Instead, he seeks a order re-establishing the status quo prior to the children's wrongful

---

[20] *See Von Kennel Gaudin v. Remis*, 282 F.3d 1178 (9th Cir. 2002); *In re Application of Mozes v. Mozes*, 239 F.3d 1067 (9th Cir. 2001); *Shalit v. Coppe*, 182 F.3d 1124 (9th Cir. 1999); and *Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002).

WILLICK LAW GROUP
3591 East Bonanza Road
Suite 200
Las Vegas, NV 89110-2101
(702) 438-4100

retention, so that a custody determination can and will be determined by a court in British Columbia, Canada.[21]

### E.   An Injunction, if Issued, Would Not be Adverse to the Public Interest

The relief Burhan seeks is authorized under the Hague Convention, an international treaty in force between Canada, the United States, and other contracting states.  Indeed, this lawsuit was referred to Burhan's counsel, in part, by the United States Department of State, which facilitates the provision of legal aid and advice for Hague Convention applicants.[22]

In other words, there can be no public interest objection raised to the relief sought by Burhan. The only relevant considerations are whether Burhan satisfies the requirements of the Hague Convention and the requirements under the Federal Rules of Civil Procedure for the issuance of emergency relief.  We believe those requirements have been satisfied here.

## IV.   CONCLUSION

Based on the above, Petitioner, Burhan Culculoglu, respectfully request this Court grant the following relief:

1.   For an immediate temporary restraining order prohibiting the removal of the children from the jurisdiction of this Court pending a hearing on the merits of Burhan's *Verified Complaint*, and further providing that no person acting in concert or participating with Michelle shall take any action to remove the children from the jurisdiction of this Court pending a determination on the merits of the *Verified Complaint*;

2.   The scheduling of an expedited hearing on the merits of the *Verified Complaint*; and an order that Michelle show cause at this hearing why the children should not be immediately

---

[21] That action, No. E130776, has already been filed in the Supreme Court of British Columbia, and only awaits the termination of this Hague proceeding to continue to a decision on the merits of custody.

[22] This office has been, for many years, the primary contact in Nevada for referral of such cases by both the State Department and The National Center for Missing and Exploited Children; we have recovered and returned children under the Convention for many years.

returned to Canada, and why the other relief requested in the *Verified Complaint* should not be summarily granted;

      3.     For an order requiring that Michelle pay the entirety of Burhan's travel expenses and attorney's fees and costs pursuant to 42 U.S.C. § 11607; and

      4.     For any such further relief as may be just and appropriate under the circumstances of this case.

      **DATED** this _28th_ day of March, 2013.

Respectfully Submitted By:

WILLICK LAW GROUP

MARSHAL S. WILLICK, ESQ.
Nevada Bar No. 002515
TREVOR M. CREEL, ESQ.
Nevada Bar No. 011943
3591 E. Bonanza Rd., Suite 200
Las Vegas, Nevada 89110-2101
(702) 438-4100
Attorneys for Petitioner

## ORDER

      **IT IS HEREBY ORDERED** that Petitioner's Motion Temporary Restraining Order (ECF No. 7) is **GRANTED.**

      **IT IS FURTHER ORDERED** that the Motion for Scheduling of an Expedited Hearing (ECF No. 6) is **GRANTED.** The Court will conduct a hearing on **Monday, April 15, 2013, at 2:00 pm, in Courtroom 7D of the Lloyd D. George United States Courthouse at 333 Las Vegas Blvd. South Las Vegas, NV 89101**. At that time, the Court will hear any arguments for extending, modifying, or dissolving this injunction. **Any written submissions must be received by the Clerk no later than 5:00 pm on Wednesday, April 10, 2013**. Additionally, at that time, the Parties shall provide a list of agreed upon dates for an evidentiary hearing on the merits of the Petition. Finally, the Parties shall advise the Court on the expected length of such an evidentiary hearing.

      **DATED** this 4th day of April, 2013.

Gloria M. Navarro
United States District Judge

# DECLARATION OF TREVOR M. CREEL, ESQ.

I, Trevor M. Creel, Esq., declare that I am an attorney with the WILLICK LAW GROUP representing Petitioner, Burhan Culculoglu.

1.    Currently, The court has not scheduled a hearing in the above referenced matter.

2.    This *Motion* is to brought for the purposes of having this Court issue a temporary restraining order and to set an expedited hearing in this matter.  This request is made in good faith and not to delay adjudication of the issues or for any improper purpose.

**I declare under penalty of perjury that under the laws of the State of Nevada (NRS 53.045 and 28 U.S.C. § 1746), that the foregoing is true and correct to the best of my knowledge.**

**EXECUTED** this _28th_ day of March, 2012.

TREVOR M. CREEL,  ESQ.

P:\wp13\CULCULOGLU,B\00023262.WPD/LF

1

WILLICK LAW GROUP
2   MARSHAL S. WILLICK, ESQ.
Nevada Bar No. 002515
3   3591 E. Bonanza Road, Suite 200
Las Vegas, NV 89110-2101
4   Phone (702) 438-4100; Fax (702) 438-5311
email@willicklawgroup.com
5   Attorneys for Petitioner

6

7

8                      **UNITED STATES DISTRICT COURT**

9                           **DISTRICT OF NEVADA**

10

11   BURHAN CULCULOGLU,                    CASE NO:    2:13-CV-446-GMN-CWH

12              Petitioner,

13        vs.

14   MICHELLE LEE CULCULOGLU,              DATE OF HEARING:
TIME OF HEARING:
15              Respondent.

16

17              **CERTIFICATE OF SERVICE BY MAIL**

18        I hereby certify that a copy of Petitioner''s Motion Under the Hague Convention for Entry of

19   a Temporary restraining Order and Scheduling of an Expedited Hearing in the above-captioned case

20   was made on the ___29th___ day of March, 2013, pursuant to NRCP 5(b)(2)(B) and the FRCP 5(b)(2)(C)

21   via United States Postal Service, first class mail, postage fully pre-paid, and addressed as follows:

22

23                      Shann Winesett, Esq.
PECOS LAW GROUP
8925 S. Pecos Road, #14A
24                      Henderson, NV 89074
*Attorneys for Respondent*
25

26

27                                      _____
Employee of the Willick Law Group

28   P:\wp13\CULCULOGLU,B\00023555.wpd/TMC

WILLICK LAW GROUP
3591 East Bonanza Road
Suite 200
Las Vegas, NV 89110-2101
(702) 438-4100